UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

PATTY JELSMA, *et al.*,           )
                                  )
      Plaintiffs,               )
                                  )
v.                                )    No.:   3:14-CV-351-TAV-CCS
                                  )
KNOX COUNTY, TENNESSEE, *et al.*, )
                                  )
      Defendants.               )

## **MEMORANDUM OPINION**

Before the Court is defendant Officer Bradley Cox's motion for reconsideration of the Court's ruling on defendants' motion for summary judgment [Doc. 95]. Plaintiff responded in opposition to defendant's motion [Doc. 98] and Officer Cox replied [Doc. 99]. For the reasons explained below, the Court will grant Officer Cox's motion to reconsider and dismiss each of plaintiffs' remaining claims.

**I.    Background**

According to the evidence submitted to the Court, defendant Officer Bradley Cox responded to a call reporting domestic trouble at Kathy Stalnaker's residence [Doc. 30-1 p. 1]. Ms. Stalnaker is plaintiff Patty Jelsma's (hereinafter "plaintiff"[1]) mother [Doc. 34-1].[2] Officer Cox submits that Ms. Stalnaker informed him that she had been in an argument with plaintiff,

---

[1] For ease of reference, the Court will refer to Patty Jelsma as "plaintiff" and will refer to plaintiff Shane Jelsma, Ms. Jelsma's husband, as "plaintiff's husband."

[2] In her affidavit, plaintiff admits that Officer Cox arrived at Ms. Stalnaker's house "ostensibly for the purpose of investigating a domestic disturbance" [Doc. 34-1]. As her affidavit does not contain any details regarding her alleged altercation with Ms. Stalnaker, and instead focuses on her interaction with Officer Cox, the Court will rely on Officer Cox's description of his conversation with Ms. Stalnaker.

in which plaintiff pushed her and threw Ms. Stalnaker's cell phone [Doc. 30-1 pp. 1–2]. Officer Cox further states that Ms. Stalnaker told him that she locked plaintiff out of a bedroom [*Id.* at 2]. When plaintiff could not get inside, she began banging on the door [*Id.*]. He submits that Ms. Stalnaker had a "mark on her left hand" at the time, supposedly from the altercation [*Id.*].

In his declaration, Officer Cox notes that plaintiff came out of the house and stood next to her vehicle once the officers arrived at the house [*Id.*]. According to Officer Cox, when he explained that he needed to prepare a report for domestic assault and requested to see plaintiff's identification, she allegedly stated that she did not have to provide him with her identification [*Id.*]. Officer Cox states that plaintiff then began to yell and refused to provide him with her identification when he asked for it "several more times" [*Id.*].

Plaintiff states that she attempted to videotape her interaction with Officer Cox on her cell phone, and she submitted the video as an exhibit [Docs. 34-1; 34-2 (hereinafter "Cell Phone Video")]. In the video, plaintiff informs Officer Cox that she is recording their conversation, to which he replies, "that's fine," before requesting to see her license again [Cell Phone Video]. Plaintiff then attempts to focus her camera on Officer Cox's nametag [*Id.*]. In response, Officer Cox appears to walk toward plaintiff, and the cell phone then moves to record the car behind plaintiff [*Id.*]. The cell phone video then proceeds to shake, as if the parties are in a struggle, before eventually going blank [*Id.*]. Plaintiff, nonetheless, can be heard in the background saying, "Sir, I'm asking if I did something wrong," and, "are you detaining me?" repeatedly, while it sounds like plaintiff is being handcuffed [*Id.*].

2

Officer Cox states that he advised plaintiff to put down her cell phone and to not call anyone until they were done speaking, but that she pushed her cell phone into his chest [Doc. 30-1 p. 2]. He then states that he needed to grab plaintiff's hand and arm for his safety, but she pulled away and turned toward her vehicle [*Id.*]. Officer Cox then states he proceeded to grab plaintiff's other arm, move her to the ground, and place handcuffs on her [*Id.*]. Plaintiff states this occurred despite the fact that she did not attempt to harm Officer Cox in any way or engage in any other type of provocation [Doc. 34-1]. Officer Cox then arrested plaintiff for domestic assault, disorderly conduct, and resisting arrest [Doc. 34-2]. All of the charges were later dropped [*Id.*].

Plaintiff filed claims under 42 U.S.C. § 1983 against Knox County, Tennessee for wrongful reinstatement, and against Officer Cox in his individual capacity for false arrest and excessive force [Docs. 1, 26]. Plaintiff's husband filed claims against both defendants under Tennessee law for loss of consortium [Docs. 1, 26].

Officer Cox filed a motion for summary judgment [Doc. 30], which the Court granted in part [Doc. 41]. The Court dismissed plaintiff's false arrest claim but denied summary judgment as to plaintiff and plaintiff's husband's other claims against Officer Cox. The Court stayed the case pending resolution of Officer Cox's interlocutory appeal of the Court's summary judgment order [Doc. 48], and subsequently lifted the stay after the Court's summary judgment decision was affirmed [Doc. 59].

In the interim, defendants filed motions in limine and/or to dismiss in which they argued, in part, that fifty-three requests for admission served on plaintiff be deemed admitted pursuant to Federal Rule of Civil Procedure 36(b) because of plaintiff's failure to timely

respond to the requests [Docs. 54, 57]. The Court referred these motions to Magistrate Judge Shirley [Doc. 60], who granted the motions with regard to each of the fifty-three requests for admission [Doc. 79]. The admissions include, among others, the following:

- Immediately after Mrs. Jelsma was placed under arrest, she had no visible injuries.
- Mrs. Jelsma never complained of any injuries after she was arrested.
- Plaintiffs are aware of no report or documentation from a physician or mental health provider stating an opinion that as a result of Mrs. Jelsma's arrest she sustained serious bodily and emotional injuries and permanent injuries.
- No physician or mental health provider has stated an opinion that as a result of Mrs. Jelsma's confrontation with Officer Cox she sustained physical and emotional injuries or permanent injuries.
- Officer Cox was advised that there was a "1083" (domestic trouble) occurring at Ms. Stalnaker's residence and that the resident's 27-year-old daughter (Mrs. Jelsma) was uncontrollable and being disrespectful.
- Officer Cox was dispatched to the residence for a possible domestic assault.
- Mrs. Jelsma had physically assaulted her mother, Ms. Stalnaker, by pushing her and knocking her glasses off of her face.
- Officer Cox was advised by Ms. Stalnaker that she was in fear of Ms. Jelsma.
- Mrs. Jelsma was a suspect of domestic violence when Officer Cox began interviewing her.
- Officer Cox told Mrs. Jelsma because the situation involved a domestic matter that he needed Mrs. Jelsma's identification information.
- During Mrs. Jelsma's interaction with Officer Cox, Mrs. Jelsma's vehicle was running.
- Mrs. Jelsma refused to provide a driver's license or identification to Officer Cox.
- Mrs. Jelsma was argumentative with Officer Cox.
- Mrs. Jelsma told Officer Cox she did not have to provide identification information to him.

- Mrs. Jelsma shoved her phone into Officer Cox's chest.
- Mrs. Jelsma pulled away from Officer Cox's grasp and tried to get into her running vehicle.

[Docs. 79, 80-1].

Officer Cox argues the Court should reconsider its summary judgment decision in light of these admissions [Docs. 95, 96]. Plaintiff responded in opposition to Officer Cox's motion [Doc. 98] and he replied [Doc. 99].

**II.      Standard of Review**

Under Federal Rule of Civil Procedure 54(b), the Court may reconsider an interlocutory summary judgment order prior to entry of a final judgment. Traditional justifications for reconsidering an interlocutory order include the availability of new evidence, an intervening change in controlling law, or a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III. Analysis**

The Court will first address why reconsideration of its summary judgment decision is appropriate under the circumstances. The Court will next address the merits of the underlying motion for summary judgment in light of plaintiff's admissions. Finally, the Court will address

6

the impact of its reconsideration on the other defendants in this case and on plaintiffs' state law claims.

### A. Reconsideration

Officer Cox argues for reconsideration of the Court's summary judgment motion under the "availability of new evidence" theory as discussed in *Rodriguez*. *See* 89 F. App'x at 959. The Court did not consider plaintiff's admissions when initially ruling on defendants' motion for summary judgment, as they had not yet been determined to be valid admissions to which plaintiff could not offer contrary evidence at trial [*See* Doc. 41]. The admissions are thus new in the sense that they were not addressed by the parties or considered by the Court during the initial summary judgment phase. Plaintiff argues, however, that the admissions do not constitute "new evidence" within the meaning of *Rodriguez* because the requests for admission predate the Court's summary judgment decision.

This distinction is largely inapposite. The Court is not required to deny reconsideration when the traditional justifications for reconsideration are not present; instead, the Court has broad authority under both Rule 54(b) and the common law to revisit interlocutory orders. *Trs. of Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023, 1033 (E.D. Tenn. 2008). Whether or not the admissions are properly characterized as "new evidence," it is clear they are material to the issues addressed in the Court's initial summary judgment decision and were not before the Court at the time of that decision. It is thus appropriate for the Court to revisit its summary judgment decision under these circumstances.

## B. Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment in which they argue they are entitled to qualified immunity [Doc. 30]. Plaintiffs argue summary judgment should be denied because defendants are not entitled to qualified immunity and there are numerous questions of material fact in the case [Doc. 33].

Under 42 U.S.C. § 1983, a plaintiff may bring a cause of action against someone who, while acting under color of state law, deprived her "of any right, privilege or immunity secured by the Constitution and federal law." *D.D. v. Scheeler*, No. 15-3294, 2016 WL 1460338, at *5 (6th Cir. Apr. 14, 2016) (citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)). Qualified immunity is an affirmative defense that shields such officials from liability unless the facts, when viewed in the light most favorable to plaintiff, "would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). [3]

A plaintiff must demonstrate that the official violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation and internal quotation marks omitted). The plaintiff bears the ultimate burden of proof. *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005). If the plaintiff fails to carry her burden as to either element of the qualified immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

---

[3] Defendants pleaded qualified immunity in their answer to the complaint [Doc. 8].

### 1. Officer Cox

Plaintiff alleges that Officer Cox falsely arrested her, in violation of the Fourth Amendment, and used excessive force against her, in violation of the Fourth, Fifth, and Fourteenth Amendments [Doc. 1 ¶¶ 13–20]. Defendants contend that Officer Cox's actions were lawful and claim he is entitled to qualified immunity. The Court will analyze plaintiff's claims in turn.

#### a. False Arrest

The Court previously found that "Officer Cox is entitled to qualified immunity against plaintiff's false arrest claim because he had probable cause to arrest her for 'some crime'" [Doc. 41]. Officer Cox does not seek reconsideration of this decision [*see* Doc. 96], so this portion of the Court's prior summary judgment order will remain intact.

#### b. Excessive Force

Plaintiff claims Officer Cox used excessive force against her in violation of her Fourth, Fifth, and Fourteenth Amendment rights. In order to state a claim for excessive force, plaintiff must prove that a constitutional violation occurred—that is, that Officer Cox used excessive force—and that the law regarding a prohibition of this type of force was clearly established at the time of the alleged incident.

Claims alleging excessive force may be resolved under the Fourth, Eighth, and Fourteenth Amendments, depending on the plaintiff's status at the time of the alleged incident. *Coley v. Lucas Cty.*, 799 F.3d 530, 537–38 (6th Cir. 2015). The Fourth Amendment's reasonableness test applies when a free citizen who was in the process of being arrested or seized claims a government actor used excessive force. *Id.* (citing *Graham v. Connor*, 490

U.S. 386, 396 (1989)); *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008)). As the instant incident occurred while plaintiff was a free citizen, the Court finds that the Fourth Amendment's reasonableness test should apply to this case. *See id.* at 866.

The Fourth Amendment prohibits arresting and investigating officers from using excessive force. *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006) (citing *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)). In conducting an arrest or investigation, an officer may use reasonable force to protect him or herself from a reasonable threat. *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010). The court must conduct an "objective reasonableness" inquiry to determine whether, under the totality of the circumstances, the officer's actions were objectively reasonable. *Graham*, 490 U.S. at 396–97. In this factual inquiry, the Court must consider the perspective of a "reasonable officer," and look to what the officer knew at the time. *Id.* at 537–38 (citations omitted).

In contemplating the reasonableness of the force exerted, the Court should also consider the following non-exclusive factors: "1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officers or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009) (citing *Graham*, 490 U.S. at 396). The Sixth Circuit has stated that this standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Smoak*, 460 F.3d at 783 (citing *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)). The lawfulness of the officer's conduct should be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Baynes v.*

*Cleland*, 799 F.3d 600, 607–08 (6th Cir. 2015) (citing *Graham*, 490 U.S. at 396). In undertaking this inquiry, the Court should construe the facts in the light most favorable to the plaintiff. *Rainey v. Patton*, 534 F. App'x 391, 395 (6th Cir. 2013).

Although the objective reasonableness inquiry focuses on the force used itself, not the injury, *Coley*, 799 F.3d at 539, a plaintiff must at least prove that the officer's use of force proximately caused the plaintiff to suffer more than a *de minimis* injury to succeed on an excessive force claim. *Smith v. City of Chattanooga*, 2009 WL 3762961, at *8 (E.D. Tenn. Nov. 4, 2009); *see also Smith v. City of Wyoming*, 821 F.3d 697, 717–18 (6th Cir. 2016) (finding that pressure used by police officer when holding arrestee's arm did not constitute excessive force, despite the fact that arrestee's arm was bruised, when arrestee did not complain to the officer regarding any injuries or see a doctor for any injuries); *Bolden v. City of Euclid*, 595 F. App'x 464, 471 (6th Cir. 2014) ("[T]he absence of injury to [plaintiff] supports the conclusion that the force used against him was reasonable."); *Youngblood v. City of Paducah*, 2016 WL 2643030, at *4 (W.D. Ky. May 6, 2016) ("An excessive force claim requires actual physical harm, and that harm must have been more than *de minimis*."). An exception to the *de minimis* injury requirement exists in cases where an officer uses "gratuitous violence" on a suspect that has already been subdued or incapacitated. *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009).

Here, plaintiff is unable to establish that she suffered more than a *de minimis* injury. Plaintiff has admitted: (1) she had no visible injuries immediately after she was placed under arrest; (2) she never complained of any injuries after she was arrested; and (3) no physician or mental health provider has stated an opinion that as a result of her confrontation with Officer

11

Cox plaintiff sustained physical or emotional injuries [Docs. 79, 80-1]. Plaintiff is unable to present evidence to rebut these admissions at trial [Doc. 79], and declined to address the issue of injuries in either her response to defendants' motion for summary judgment [Doc. 35] or her response to Officer Cox's motion for reconsideration [Doc. 98].

Plaintiff has also never alleged "gratuitous violence" on the part of Officer Cox, and the facts simply do not support a finding of gratuitous violence sufficient to excuse plaintiff from the requirement of proving more than a *de minimis* injury. *Compare Morrison*, 583 F.3d at 407 (finding gratuitous violence where, after handcuffing plaintiff and forcing her to the ground, an officer repeatedly forced plaintiff's face into the ground any time she attempted to speak) *with* plaintiff's allegations in the complaint [Doc. 1] (Officer Cox grabbed plaintiff and slammed her to the ground) as colored by her admissions [Doc. 80-1] (this occurred as plaintiff attempted to pull away from Officer Cox and get into her running vehicle).

Additionally, Officer Cox's application of force was objectively reasonable in light of plaintiff's admission that she pulled away from Officer Cox's grasp and attempted to get into her running vehicle. Viewing the totality of the circumstances and affording appropriate deference to Officer Cox, he reasonably could have interpreted this conduct as "the suspect actively resist[ing] arrest or attempt[ing] to evade arrest by flight." *Harris*, 583 F.3d at 365 (citing *Graham*, 490 U.S. at 396). Such conduct would warrant an appropriate application of force. In this case, grabbing plaintiff and slamming her to the ground was objectively reasonable under the circumstances as a necessary application of force to prevent plaintiff from evading arrest by flight.

Plaintiff is thus unable to prove more than a *de minimis* injury or prove gratuitous violence, and Officer Cox's application of force was objectively reasonable under the circumstances. The Court will thus grant summary judgment to Officer Cox on plaintiff's excessive force claim.

### 2. Knox County

Officer Cox also argues plaintiff's claim against Knox County should be dismissed in the event the Court dismisses plaintiff's excessive force claim. Plaintiff did not respond to this argument [*see* Doc. 98].

Upon dismissal of plaintiff's excessive force claim, no claims will remain against Officer Cox. The Court will thus dismiss plaintiff's remaining § 1983 claim against Knox County. *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

### 3. State Law Claims

The Court having previously dismissed plaintiff's false arrest claim against Officer Cox, and in light of the Court's instant decision to dismiss plaintiff's excessive force claim against Officer Cox and her remaining § 1983 claim against Knox County, the only remaining claims in this case are plaintiffs' pendent state law claims.

"[T]he usual course is for the district court to dismiss . . . state law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001). The Court will follow the usual course and dismiss plaintiffs' pendent state law claims without prejudice.

## IV. Conclusion

For the reasons stated herein, the Court will **GRANT** Officer Cox's motion for reconsideration [Doc. 95]. The Court will **DISMISS** plaintiff's excessive force claim against Officer Cox, **DISMISS** plaintiff's remaining § 1983 claim against Knox County, and **DISMISS without prejudice** plaintiff's pendent state law claims.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE